Walter F. BIGGINS, Plaintiff, Appellant,

v.

The HAZEN PAPER COMPANY, Robert Hazen and Thomas N. Hazen, Defendants, Appellees.

Walter F. BIGGINS, Plaintiff, Appellee,

v.

The HAZEN PAPER COMPANY, Robert Hazen and Thomas N. Hazen, Defendants, Appellants.

Nos. 96–1870, 96–1871.

United States Court of Appeals, First Circuit.

Heard Dec. 6, 1996.

Decided April 18, 1997.

Maurice M. Cahillane, Springfield, MA, with whom John J. Egan and Egan, Flanagan and Cohen, P.C., were on briefs, for plaintiff.

Robert B. Gordon, Boston, MA, with whom John H. Mason and Ropes & Gray were on briefs, for defendants.

Before BOUDIN, Circuit Judge,
CAMPBELL and BOWNES, Senior Circuit Judges.

BOUDIN, Circuit Judge.

This Flying Dutchman of a case has returned to us after a first trial, a panel decision, Supreme Court review, a further panel decision, an *en banc* order directing a further trial on one count, and then a second trial, followed now by the instant appeal. We hope that this opinion will bring the matter to a close, for a decade of litigation about a single, narrow event is enough.

## I.

The case began in February 1988 when Walter Biggins brought suit in district court against his former employer, Hazen Paper Company, and its two principals, Robert Hazen, the president, and his cousin, Thomas Hazen, the treasurer. The company is a small but successful maker of specialty papers of various kinds. Biggins joined the company in 1977, at age 52, and served as its technical director for about nine years. He had no written employment contract.

During his employ, Biggins developed a superior waterbased paper coating that increased the company's sales. He sought a larger salary, was given a small increase, but remained unsatisfied and sought a further increase. Biggins later claimed that in 1984 Thomas Hazen had promised him company

stock instead of a further raise; Thomas Hazen denied making any such promise.

Biggins, during his employ by the company, was also involved in two different ventures with his sons. When Thomas Hazen learned of this, he sought a confidentiality agreement from Biggins, limiting his outside activities during, and for a limited time after, his employment with the company. Biggins refused to sign, except in exchange for the stock he said had been promised. He was discharged in June 1986—a few weeks before his rights under the company pension plan would otherwise have vested.

Biggins then sued the company and the Hazen cousins (collectively "the Hazens") in an eight-count complaint. The first two counts charged the Hazens with age discrimination under the ADEA and interference with pension rights under ERISA.[1] The remaining claims, of limited importance to this appeal (except for the contract claim), were for wrongful deprivation of property, wrongful discharge, fraud, conversion, breach of contract and violation of the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, §§ 11H and 11I.

In substance, Biggins claimed under the first two counts, respectively, that he had been fired on account of his age—he was replaced with a younger man—and to prevent the vesting of his pension. In additional counts, he also sought the value of the stock allegedly promised by Thomas Hazen and the benefit of the paper-coating formula and method, which Biggins claimed to own. The gravamen of the remaining counts was that he had been wrongfully discharged in violation of various rights protected under state law.

In its verdict, the jury largely accepted Biggins' position, apart from his claim to ownership of the formula, which it rejected. On the ADEA claim, the jury awarded him around $560,000; the ERISA award was $100,000, later adjusted downward to $93,000 on appeal. The fraud award for the allegedly promised stock was about $315,000. Biggins was also awarded just under $267,000 for discharge in violation of contract. On

two other counts, only nominal damages were awarded.

Because the jury found that the age discrimination was willful, the award on the ADEA count would normally have been doubled, see 29 U.S.C. § 626(b), but the district court granted judgment n.o.v. in favor of the Hazens on the issue of willfulness. In other respects, the district court upheld the jury verdict against various post-trial motions. We reserve for later discussion the issue of attorney's fees, which the district court also addressed.

On appeal, a panel of this court affirmed the district court with several exceptions. *Biggins v. Hazen Paper Co.*, 953 F.2d 1405 (1st Cir.1992). Two are pertinent here: first, the panel found that the evidence on the ADEA count supported damages (before doubling) of only about $420,000, but the panel also reinstated the willfulness finding and doubled the reduced award to about $840,000. *Id.* at 1416. Second, the panel set aside the contract claim verdict for lack of sufficient evidence to establish a contract. *Id.* at 1421–24.

The Supreme Court then granted *certiorari* and vacated the panel decision on the ADEA count. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993). The Court held that the panel had been mistaken in relying upon the ERISA violation to supply the wrongful motive for the ADEA violation; it said that pensions might often correlate with age but a firing to prevent pension vesting did not itself amount to a firing based upon age. *Id.* at 611–13, 113 S.Ct. at 1706–08.

The Supreme Court remanded the case to the panel to reconsider whether the jury had sufficient evidence to find an ADEA violation once the ERISA violation was put to one side. 507 U.S. at 614, 113 S.Ct. at 1708. On remand, the original panel reconsidered the ADEA claim. In a second opinion in October 1993, it ruled that even disregarding the ERISA violation, enough evidence of age discrimination remained to sustain the ADEA verdict, reduced and then doubled as before.

---

1. ADEA is the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* and ERISA is the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.*

The Hazens then petitioned for rehearing *en banc,* arguing *inter alia* that the panel had misconstrued a pertinent Supreme Court decision issued shortly after its remand in this case, *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). After soliciting memoranda, the *en banc* court in June 1994 ordered a new trial on the ADEA count, concluding that the verdict on this count had been contaminated by the same mistake that had led the Supreme Court to vacate the original panel decision.

Biggins unsuccessfully sought rehearing and then petitioned the Supreme Court for review, arguing that the *en banc* court had no power to order a new trial and that the decision to do so violated the Supreme Court's mandate. The Supreme Court denied *certiorari. In re Biggins,* 513 U.S. 1013, 115 S.Ct. 614, 130 L.Ed.2d 523 (1994). In April 1996, the district court held a new two-week jury trial on the ADEA count. The jury returned a verdict for the Hazens.

After various post-trial motions, Biggins filed the appeal now before us; a cross-appeal was filed by the Hazens relating only to attorney's fees. We begin with the attacks by Biggins upon the *en banc* court's remand for a new trial, and then address his claims of error in the second trial. Attorney's fees issues, raised by the Hazens' cross-appeal, are considered at the close.

## II.

■ Biggins' challenge to the *en banc* order requiring a new trial is, strictly speaking, addressed to the wrong bench. The arguments that the remand was unlawful or unsound were presented to the *en banc* court in a petition for rehearing, rejected there, and then presented in a petition for *certiorari* which the Supreme Court denied. It is not open to the panel, in the normal case, to reconsider issues decided earlier in the same case by the *en banc* court. *See United States v. DeJesus,* 752 F.2d 640, 642–43 (1st Cir.1985).

Nevertheless, it may be helpful to explain why Biggins' arguments relating to authority of the *en banc* court are mistaken. His constitutional argument amounts to this: first, the Seventh Amendment prohibits any federal court from reexamining jury findings "otherwise ... than according to the rules of common law"; and second, in Biggins' view, the *en banc* court's new trial order overturned the jury findings of age discrimination—without any identified legal error committed by the district court.

This last qualification is critical. Where there is legal error, appeals courts often overturn jury verdicts, and order new trials or even dismissal. This occurs, for example, where evidence has been wrongly admitted, or where an instruction was mistaken, or even where the evidence did not permit a reasonable jury to reach the verdict rendered. *See* 9A C. Wright & A. Miller, *Federal Practice and Procedure* § 2540 (2d ed.1995); 11 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2805 (2d ed.1995).

The *en banc* court did find prejudicial legal error in the conduct of the original trial. The court's appraisal, as noted earlier, was that the jury was potentially misled by the same error that the Supreme Court identified in the first panel decision, namely, a belief that the wrongful motive (pension interference) that gave rise to an ERISA violation by itself constituted wrongful motive under ADEA. Whether or not the *en banc* court's assessment of prejudice was invincibly supported, the *en banc* court was free under the Seventh Amendment to make that judgment.[2]

Biggins' other challenge to the *en banc* court's authority is also wide of the mark. He argues that when the Supreme Court remanded the case to this court, it precluded this court from taking any action other than an up-or-down vote as to whether enough evidence remained to support the ADEA verdict. Therefore, says Biggins, the *en banc* court has violated the Supreme Court's mandate.

---

**2.** The concern did not come out of the blue. Biggins had relied in his complaint upon the deprivation of pension benefits as an act of age discrimination and had made the same argument on appeal.

■ Of course, a higher court's mandate must be respected, *Sprague v. Ticonic Nat'l Bank,* 307 U.S. 161, 168, 59 S.Ct. 777, 780–81, 83 L.Ed. 1184 (1939), but the issue here is the scope of the mandate. Where as here a judgment is vacated and the matter remanded, *Hazen Paper Co.,* 507 U.S. at 617, 113 S.Ct. at 1710, the lower court must undo the judgment just vacated and cannot normally revisit a legal issue actually decided by the reviewing court. But after that, the situation is less rigid than Biggins assumes.

■ On remand, courts are often confronted with issues that were never considered by the remanding court. And

> although the mandate of an appellate court forecloses the lower court from reconsidering matters determined in the appellate court, it 'leaves to the [lower] court any issue not expressly or impliedly disposed of on appeal.' *Stevens v. F/V Bonnie Doon,* 731 F.2d 1433, 1435 (9th Cir.1984).

*Nguyen v. United States,* 792 F.2d 1500, 1502 (9th Cir.1986). Broadly speaking, mandates require respect for what the higher court decided, not for what it did not decide.[3]

Here, the *en banc* court concluded that the contamination of the ADEA verdict required a new trial, even assuming that the remaining evidence might otherwise support a verdict for Biggins on that claim. Whether this judgment was right or wrong—and we cannot revisit it—the contamination issue had certainly not been addressed in the Supreme Court's opinion. And when Biggins made his mandate argument for *certiorari,* the Supreme Court denied the petition.

### III.

The next claim of error presents the most difficult issue in the case. Prior to the start of the second trial, motions *in limine* were filed by both sides. One such motion, filed by Biggins, invoked collateral estoppel and asked that the Hazens be barred from relitigating issues decided in the first trial on counts other than the ADEA claim. Specifi-

cally, Biggins asked that the Hazens be precluded· at trial from showing or arguing (and we quote):

— that the plaintiff was not fired, but left work voluntarily,

— and/or that the plaintiff was fired because he was a disloyal employee,

— and/or that the plaintiff's disloyalty created a need for the defendants to dictate that he sign a restrictive agreement.

In a second *in limine* motion, Biggins asked that the Hazens also be precluded from showing or arguing that Biggins was seeking additional compensation when, in Spring 1986, he conditioned his signing of the confidentiality agreement on being given stock. Biggins claimed that the first trial had determined that he had been promised the stock in 1984 and that the company had been found liable for fraud in withholding the stock.

The district judge rejected both *in limine* motions after an oral hearing, expressing some doubt but concluding that the *en banc* court had intended a full new trial on the ADEA count. The judge said (and Biggins readily agreed) that it could make the new trial an empty gesture if the jury were told that Biggins was an innocent victim who had been fired by the Hazens as part of an effort to defraud Biggins. The court did instruct the jury that Biggins had been fired and had not resigned.

■ Collateral estoppel, now often called issue preclusion, prevents a party from relitigating at a second trial issues determined between the same parties by an earlier final judgment—subject to various limitations. *Lundborg v. Phoenix Leasing, Inc.,* 91 F.3d 265, 271 (1st Cir.1996); *Restatement (Second) of Judgments* § 27 (1982). But the limitations have been slowly diluted over time and most are irrelevant here. Nor do the Hazens dispute that the jury verdict in favor of Biggins at the first trial is now final except on the ADEA count.

---

**3.** *See also Rogers v. Hill,* 289 U.S. 582, 587–88, 53 S.Ct. 731, 734, 77 L.Ed. 1385 (1933)(absent a contrary direction, a district court on remand can permit the plaintiff to 'file additional plead-

ings, vary or expand the issues....'); *Sierra Club v. Penfold,* 857 F.2d 1307, 1311–12 (9th Cir.1988); *Alter Fin. Corp. v. Citizens & Southern Int'l Bank,* 817 F.2d 349 (5th Cir.1987).

■ The Hazens' main argument against collateral estoppel has been that the "issues" in the two cases were different because nothing in the first trial *validly* determined that the Hazens had been motivated by age in firing Biggins (since the Supreme Court had vacated this claim). This won't wash. True, age motivation is usually the ultimate issue under the ADEA; but collateral estoppel is no longer limited to ultimate issues: necessary *intermediate* findings can now be used to preclude relitigation. *Grella v. Salem Five Cent Savings Bank*, 42 F.3d 26, 30–31 (1st Cir.1994); *Restatement (Second), Judgments* § 27, comment j. (1982).

Often it is very difficult to prove that the initial trial necessarily decided an intermediate issue. But in this case the special verdict form and reasonable inference indicates that several "facts" were determined by the jury on counts other than ADEA: (1) that Biggins was fired, (2) that the stock had been promised to him, and (3) that (in the words of the verdict form) "defendants wrongfully discharged plaintiff in order to deprive plaintiff of the promised stock compensation...."

■ At the new trial, the jury was instructed that Biggins had been fired, so that is out of the case. But on the second issue Biggins says that the Hazens relitigated the issue of whether they had promised him stock, and that appears to be the case. A good argument can be made that under standard collateral estoppel doctrine, the Hazens should not have been allowed to relitigate the issue whether "in fact" Thomas Hazen had promised the stock to Biggins, a point about which both Biggins and Hazen told largely inconsistent stories.

Yet if there was error, we regard it as harmless. Whether the stock was promised has little relevance to the question whether the Hazens engaged in age discrimination when they fired Biggins. Biggins argues that the Hazens purported to fire him because he refused to sign the confidentiality agreement and *therefore* the stock promise was relevant, Biggins having offered to sign in exchange for the promised stock. But

Biggins' refusal to sign does not vanish as a plausible motive for the Hazens, regardless of whether stock was wrongly withheld.

Obviously the Hazens wanted to relitigate the stock-promise issue, and Biggins to foreclose relitigation, because the Hazens look worse—from the standpoint of character—if they were welshing on a promise and Biggins looks worse if he were making new demands. But character evidence is not normally admissible to show conformity therewith. Fed. R.Evid. 404(a). Thus, the *permissible* use of the evidence about the promise was very limited so far as the ADEA claim was concerned; properly used, it added useful context, nothing more.

■ Turning to the third "fact" in issue, we reject Biggins' claim that the jury should have been told that the Hazens fraudulently discharged Biggins to deprive him of promised stock. How such an instruction would be understood is unclear: the Hazens say that (by supplying a different motive) it cuts *against* Biggins' current claim that he was discharged on account of age; on the other hand, Biggins would obviously have liked the new jury to hear the terms "fraud" and "wrongful discharge" as a dual motive.

The problem the jury confronted on retrial was to sort out any age discrimination motive in the tangle of other possible motivations, including perceived disloyalty, compensation quarrels, and the like. We think that it would badly distort matters to tell the jury that in carrying out this task, it must accept that the Hazens' motivation in firing Biggins was wrongful or fraudulent. The glare from such an instruction would distort any effort to distinguish shadows or shades in the Hazens' actual motivation. *See* Fed.R.Evid. 403.[4]

In sum, there was no prejudicial error in this challenged refusal to apply collateral estoppel. We thus need not decide whether, even on the opposite assumption, it would make any sense to reverse here. After all, the issues have now been relitigated, collateral estoppel is a doctrine of judicial economy, and one might wonder whether—assuming

---

4. Biggins also argues that the second jury should have been told that at the prior trial, Biggins had been found to be loyal. There is no indication from the special verdict that the first jury made a generic finding of "loyalty."

no other error-such an objective would be served by a third trial. *Cf. Lama v. Borras,* 16 F.3d 473, 476 n. 5 (1st Cir.1994) (court of appeals will not review denial of summary judgment motion after a full trial and an adverse jury verdict).

### IV.

In addition to the two large claims of error—the attack on the *en banc* order and the collateral estoppel claim—Biggins makes six shorter claims of trial error and also seeks to resurrect the contract claim found insufficient by the first panel opinion. Only the contract claim and one of the six claimed trial errors require any discussion; the other alleged errors are fairly raised but are answered by the Hazens and are of no general interest.

■ Biggins' strongest claim of error, which we do address, is that the district court on retrial erred by excluding evidence of his pension status and the Hazens' effort to deprive Biggins of his unvested pension plan benefits upon termination. Biggins says that without this information, the jury was misled by the Hazens' effort at the second trial to portray the company as a generous employer willing to provide such benefits for Biggins.

The Hazens argue that the attempted pension termination is irrelevant: they say that Biggins can collect only once for the wrongful termination of his pension, and this loss was compensated by the earlier award on the ERISA count. But that is beside the point: facts underlying one claim could be pertinent to a different claim, regardless of whether the former claim had been satisfied. Still, the Hazens also argue that in this instance the Supreme Court expressly decided that interference with pension vesting is not age discrimination.

Actually, the Supreme Court reserved the possibility that pension evidence might occasionally be relevant where the employer is shown consciously to equate pension status with age, *Hazen Paper Co.,* 507 U.S. at 612–13, 113 S.Ct. at 1707–08; but that is not Biggins' argument here. Rather, what Biggins wanted the jury to infer from the pension interference finding is that the Hazens are not as nice as they claim to be. Again, this is largely forbidden character evidence, although the trial court has some latitude since the evidence can also be treated as context.

Still, in regard to age discrimination, the Hazens' generosity *vel non* is at best marginally relevant. The district court had every reason to worry, in light of the Supreme Court and *en banc* decisions, that undue attention to pension termination would prompt yet another reversal. Even if some narrow path could have been followed—*e.g.,* by limiting instructions—the district court was within its discretion in declining to do so. *See United States v. Houlihan,* 92 F.3d 1271 (1st Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 963, 136 L.Ed.2d 849 (1997).

Biggins' other claim relates to his post-verdict motion. Following the second trial, Biggins filed a motion to reopen the adverse judgment on the contract claim, relying upon Fed.R.Civ.P. 60(b)(6), which permits the court to undo a final judgment. His claim was that a recent state decision undermined the panel's earlier rejection of the contract claim. The district court denied the motion.

To understand this Rule 60(b) claim, one must return to the original proceedings. In the first trial, the jury awarded Biggins about $267,000 on his breach of contract claim; Biggins claimed that the company's "employee handbook" comprised a contract under *Jackson v. Action for Boston Community Development, Inc.,* 403 Mass. 8, 525 N.E.2d 411 (1988), and that protections it afforded against discharge had been denied to him. *Jackson* had held that "on proper proof, a personnel manual can be shown to form the basis of [such] an express or implied contract." 525 N.E.2d at 414.

On the first appeal, the panel set aside the contract claim award. The panel noted that there was no evidence that the handbook had been incorporated into a contract by negotiation or that either Biggins or the company had treated the handbook as a contract between them. 953 F.2d at 1423. The panel held that a judgment n.o.v. should have been granted and vacated the award. That disposition, like the several jury awards to Biggins

that were not further challenged by the Hazens, became final.

In the Rule 60(b) motion, Biggins argued that a more recent decision of the state's highest court, *O'Brien v. New England Telephone & Telegraph Company*, 422 Mass. 686, 664 N.E.2d 843 (1996), conflicts with the panel's earlier treatment of the contract issue in 1992. We agree that the panel's disposition of the contract claim might have been different had *O'Brien* been decided earlier: its tone and language are more favorable to such recoveries than *Jackson*. While there is no direct contradiction, *O'Brien* is a gradual extension of precedent (*Jackson* was itself an extension of an earlier case) typical of common-law jurisprudence.

■ Yet the case law is very hostile to using a mistake of state law, still less a *change* in state common law, as grounds for a motion to reopen a final judgment under Rule 60(b)(6). Although the door is not quite closed, *cf. Polites v. United States*, 364 U.S. 426, 433, 81 S.Ct. 202, 206–07, 5 L.Ed.2d 173 (1960), there is good sense—as well as much precedent—to make this the rarest of possibilities.[5] Decisions constantly are being made by judges which, if reassessed in light of *later* precedent, might have been made differently; but a final judgment normally ends the quarrel.

Indeed, the common law could not safely develop if the latest evolution in doctrine became the standard for measuring previously resolved claims. The finality of judgments protects against this kind of retroactive lawmaking. Admittedly, there is some arbitrariness (*e.g.*, "new law" is applied in cases still on direct appeal); but, by the same token, *Jackson* itself had not been decided when the Hazens first handed out their employee handbook.

■ Biggins says that the abuse of discretion standard under Rule 60(b) should not shield the district court in this case, since that court may have thought itself disabled from reconsidering the panel's holding on the contract award. But absent extraordinary circumstances, we would think it dubious practice to reopen a final judgment under Rule 60(b)(6) solely because of later precedent pointing in a different direction. The fact that a different claim in this case is still alive does not comprise an extraordinary circumstance.

The Hazens' cross-appeal is a challenge to the district court's award of attorney's fees. To understand the issues requires us to retrace several steps, beginning again with the first trial. After that trial, the district court in two stages awarded Biggins a total of about $207,000 in fees (plus costs), reflecting Biggins' success on both the ADEA and the ERISA claims.

Attorney's fees are mandatory for the successful plaintiff under the ADEA and permissible under ERISA, see 29 U.S.C. § 626(b); 29 U.S.C. § 1140; as to the latter, the district court exercised its discretion in favor of an award. No such fees were available for the common-law claims on which Biggins recovered substantial damages, namely, fraud and discharge in violation of contract. The award for the two federal claims was based upon straight time and upon hourly rates not now in issue.

After the first panel opinion, Biggins—having successfully defended his verdicts on both federal claims—sought an additional award of attorney's fees and costs for appellate work. In March 1992, the panel awarded Biggins additional fees of just under $72,000. There followed the Supreme Court remand of the ADEA claim and the second panel opinion where Biggins, again successful on that claim, sought further attorney's fees in November 1993.

However, in June 1994, the *en banc* court vacated the ADEA award, ordering a new trial. In a companion order, the panel declined to award any additional fees for the first appeal, as sought by Biggins, and said that the remainder of Biggins' application for additional fees had been rendered moot by the *en banc* order. The case then returned

---

**5.** *See, e.g., Batts v. Tow–Motor Forklift Co.*, 66 F.3d 743, 750 (5th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1851, 134 L.Ed.2d 951 (1996); *Overbee v. Van Waters & Rogers*, 765 F.2d 578, 580 (6th Cir.1985); *Seese v. Volkswagenwerk A.G.*, 679 F.2d 336, 337 (3d Cir.1982).

to the district court where the new trial occurred in April 1996.

After the second trial, Biggins sought to execute judgment on the prior awards of attorney's fees (just over $207,000 for the first trial and almost $72,000 for the first appeal). The Hazens, by contrast, moved under Fed.R.Civ.P. 60(b)(5) to reopen the judgment and reduce the previously awarded fees because Biggins was no longer the prevailing party on the ADEA claim. In July 1996, the district court resolved the matter in a detailed memorandum, pointing out that he was "intimately familiar" with the case.

The district judge agreed with the Hazens that the fee award resulting from the first trial should be reexamined, since one predicate (the ADEA award) had now been undone. *See Mother Goose Nursery Schools, Inc. v. Sendak,* 770 F.2d 668, 676 (7th Cir. 1985), *cert. denied,* 474 U.S. 1102, 106 S.Ct. 884, 88 L.Ed.2d 919 (1986). But the district judge disagreed with the Hazens that a drastic reduction was warranted. He concluded that subtracting the ADEA claim from the first trial would not have substantially reduced the amount of time needed to prepare and try the ERISA claim on which Biggins had conclusively prevailed. He ruled that a 20 percent reduction was warranted and awarded 80 percent of the original $207,000 figure to cover the original trial.

The district court declined to alter the panel's award of almost $72,000 for the first appeal; that appeal, it will be remembered, had resulted in affirmance of the ADEA and ERISA awards, but the ADEA award had later been undone. The district court said that this court had likely considered the matter of a reduction when it remanded for a new trial, and in any case, that award was the court of appeals' business.

Accordingly, the district court entered a revised judgment covering the entire attorney's fees award in both courts. The total is about $237,700, apart from costs. It is from this judgment that the Hazens have now cross-appealed, objecting both to the modesty of the 20 percent reduction in the district court fee and the refusal to reduce at all the amount awarded by this court for appellate work.

The district judge's refusal to order more than a 20 percent reduction is easily sustained. Most of this case has focused throughout on a central event, Biggins' firing, in an effort to appraise the Hazens' reason or reasons; but motivation had to be discerned through examination of several controversies that had enveloped the parties and led up to the firing, including Biggins' other ventures and claim to stock ownership.

A trial of the firing and related background events would have been quite extensive, and probably pretty similar in contour, even if Biggins had brought only one of the two federal claims. Indeed, the second trial was nominally limited to the ADEA claim, but its duration and breadth were considerable. The commonality of issues has already been noted, in the Hazens' favor, sustaining their evidence as to background matters in the second trial.

In all events, the Hazens make no effort to show in detail that the 20 percent reduction understates the time savings from (hypothetically) eliminating the ADEA claim from the first trial. Instead, they rely mainly upon doctrine, namely, that where

> a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount .... even where the plaintiff's claims were interrelated....

*Hensley v. Eckerhart,* 461 U.S. 424, 436, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983).

We say "mainly" because the Hazens also try to make use of Biggins' earlier attempt, in resisting a remand, to minimize the importance of the ERISA claim in the first trial. It is true that Biggins called the claim little more than "a blip on the screen" but, of course, the *en banc* court disagreed with him. Catching up counsel on past rhetoric is sometimes fair, but not in the present situation where the "blip" argument was so clearly unsuccessful exaggeration.

This brings us back to *Hensley.* Of course, it is sometimes appropriate to discount for failed or non-compensable claims where they cannot be neatly segregated from

a successful compensable one. But the district court did discount by 20 percent for the failed ADEA claim; and it took the original $207,000 award as already reduced to account for time spent on state claims that would not have been needed for the federal claims. The former adjustment is obvious; and if the latter assumption is an error, the Hazens have not shown it.

Finally, we come to the district court's refusal to reduce the award of almost $72,000 made by this court for the first appeal. Biggins says that this award is no longer open because the Hazens did not ask for a reduction at the time of the remand; the Hazens say, we think with some justification, that such a reduction request would have been premature since the possibility remained that Biggins would still prevail on the ADEA claim at the second trial.

But this court is not inclined to reopen its earlier $72,000 award. In theory, the Hazens have a claim that time spent on the first appeal as to the ADEA issue—among a considerable number of other issues—ought to be subtracted. But one may doubt, at least here, whether much discernable cost is added by writing more pages in an appellate brief, to address one more issue with which counsel is already familiar after an extensive trial.

In refusing to reopen the earlier award, we also take into account two other factors: that the original panel earlier refused to enlarge Biggins' award, despite his offer of further time records, and that this panel has no intention of making a further award to Biggins for time he has just spent in defending his attorney's fee judgment (although it too could be the subject of an award in this court's discretion). From our standpoint, this case is now over.

*Affirmed.*