# United States Court of Appeals
## For the First Circuit

No. 07-2418

NEW ENGLAND POWER COMPANY,

Petitioner,

v.

FEDERAL ENERGY REGULATORY COMMISSION,

Respondent.

TOWN OF NORWOOD, MASSACHUSETTS,

Intervenor.

ON PETITION FOR REVIEW OF ORDERS OF THE

FEDERAL ENERGY REGULATORY COMMISSION

Before

Torruella, <u>Circuit Judge</u>,
Cudahy,[*] <u>Senior Circuit Judge</u>,
and Lipez, <u>Circuit Judge</u>.

<u>Kenneth G. Jaffe</u>, with whom <u>John F. Sherman, III</u>, <u>Ronald E. Minsk</u>, and <u>Alston & Bird LLP</u> were on brief, for petitioner.
<u>Samuel Soopper</u>, with whom <u>Cynthia A. Marlette</u> and <u>Robert H. Solomon</u> were on brief, for respondent.

[*] Of the Seventh Circuit, sitting by designation.

Robert A. Jablon, with whom Daniel I. Davidson, Sharon Coleman, Spiegel & McDiarmid LLP, J. Owen Todd, Juliet A. Davison, Heidi A. Nadel, and Todd & Weld LLP were on brief, for intervenor.

_____

July 16, 2008

_____

**LIPEZ, Circuit Judge.** New England Power Company ("NEP") seeks review of orders of the Federal Energy Regulatory Commission ("FERC" or the "Commission").[1] In the orders, FERC found the 18 percent per year late payment charge that NEP had applied to the Town of Norwood's overdue contract termination payments to be unjust and unreasonable. FERC ordered that NEP substitute a prime rate-based interest rate as set forth in 18 C.F.R. § 35.19a (the "Revised Interest Rate"). NEP does not appeal this ruling. Instead, NEP challenges only FERC's determination that the lower Revised Interest Rate must be applied to bills rendered before June 30, 2006, arguing that the earlier application constitutes impermissible retroactive rate-making. Because FERC failed to address NEP's retroactivity arguments and instead based its decision to apply the Revised Interest Rate to the earlier bills solely on an erroneous reading of our opinion in Town of Norwood v. FERC, 476 F.3d 18, 29 (1st Cir.), cert. denied, 128 S. Ct. 432 (2007) ("Norwood IV"), we vacate that portion of the orders and remand for full consideration by the Commission of the appropriate effective date for the Revised Interest Rate.

---

[1] Two orders fall within the scope of this petition: FERC's Order on Remand, dated May 17, 2007, and its Remand Rehearing Order, dated August 30, 2007, in which FERC denied NEP's request for clarification or rehearing of the May 17th order.

The background of this protracted dispute is set forth in detail in Town of Norwood v. FERC, 202 F.3d 392, 397-98 (1st Cir.), cert. denied, 531 U.S. 818 (2000) ("Norwood I"), Town of Norwood v. FERC, 202 F.3d 408, 412-14 (1st Cir.), cert. denied, 531 U.S. 818 (2000) ("Norwood II"), Town of Norwood v. FERC, 217 F.3d 24, 25-27 (1st Cir.), cert. denied, 532 U.S. 993 (2001) ("Norwood III"), and Norwood IV, 476 F.3d at 20-24. For our purposes, only a brief outline is required.

The case arises from the Town of Norwood's 1998 decision to terminate its full requirements electric service contract with NEP prior to its scheduled expiration in 2008 so that Norwood could change power suppliers. Pursuant to a FERC-approved tariff, Norwood was permitted to terminate the contract early upon payment of a contract termination charge (the "CTC"). The CTC was calculated using a formula that would enable NEP to recover the revenues that it would have collected if a terminating customer had continued to pay the tariff rate then in effect through the end of the contract term. In a series of lawsuits, Norwood mounted unsuccessful challenges to the reasonableness of the CTC formula, as well as the values used in calculating the amount of the CTC under the formula.

In Norwood IV, we disposed of the last of Norwood's substantive challenges to the CTC formula, concluding that

-3-

Norwood's remaining objections were either without merit or barred by res judicata. We then turned to a series of arguments raised by Norwood regarding late payment charges applicable to the monthly bills for CTC installments. NEP had begun sending these bills to Norwood in May 1998. In June 1998, it had begun including late payment charges of 18 percent per year (1.5 percent per month) as set forth in schedule I, section J of its tariff.[2] We affirmed FERC's conclusion that the section J rate was the governing provision for the late payment charge, but concluded that FERC's June 30, 2006 order had not adequately addressed Norwood's contention that the 18 percent rate constituted an unreasonable penalty. Norwood had argued that the rate was unreasonable because it was in excess of NEP's cost of money and was inconsistent with Connecticut Light & Power Co., 59 F.P.C. 811 (1977), in which FERC itself had rejected a proposed 18 percent late fee on the ground that it was "not supported by cost data." Id. at 821. We rejected FERC's decision to distinguish Connecticut Light & Power based

_____

[2]Norwood did not make any CTC payments until July 22, 2004. On that date, Norwood paid $20,356,994.35. Following our decision in Norwood IV, Norwood made an additional lump sum payment of $15,014,428 in March 2007. In addition, Norwood made the monthly CTC payments of $599,971 during September through February 2007 and a single payment of $599,971 in July 2007. When the record closed at FERC, combined payments totaled $38,371,277. Norwood avers in its brief that, since that time, it has made additional payments such that the total of its payments to NEP now equals $54,407,886.22. Norwood contends that this represents payment in full of the principal owed, plus interest computed at the 18 C.F.R. § 35.19a rate with future payments discounted at the current 18 C.F.R. § 35.19a rate.

solely on Norwood's failure to introduce cost evidence to show that the provision was not cost related, noting that "NEP[] does not seriously suggest that 18 percent represents its cost of money." Norwood IV, 476 F.3d at 28. Accordingly, we remanded the issue to the Commission with instructions to "squarely and adequately resolve" the issue of the reasonableness of the 18 percent rate. Id. at 29.

We then addressed "one other loose end as to interest," concerning Norwood's argument that "even if the 18 percent rate is applicable to CTC late payments, the rate should not be applied to payments due prior to FERC's order of February 22, 2006, since before that point the CTC amount had not been determined."[3] Id. We rejected this argument by relying on the language of the tariff itself, which anticipated that the amount billed may be in dispute and provided that interest nevertheless would accrue during the pendency of the dispute:

> [S]ection J makes it quite clear that, when a customer disputes an amount billed by a carrier, the carrier is entitled to prescribed interest that accrues "from . . . the rendering of said bill" on "the amount finally determined to be due and payable."

Id. We then concluded our discussion with a paraphrase of the tariff language: "Norwood has challenged the amount of interest

---

[3]The February 22, 2006 order affirmed FERC's prior rulings rejecting Norwood's challenges to the CTC. Norwood contended that prior to that date the amount of the CTC payment was in dispute and so no interest should have accrued.

prescribed; but whatever the figure FERC finds justified, the tariff provides that Norwood owes that amount from the time the bill was rendered." Id. In summarizing our holdings at the end of the opinion, we restated that Norwood was responsible for "interest payments based on at least the prime rate – the figure Norwood itself seeks – and remand[ed] only as to whether more was properly due." Id.

On remand, FERC concluded that the 18 percent interest rate for late payments was unjust and unreasonable and directed NEP to "file a report with the Commission reflecting the amount of the CTCs owed, plus the applicable interest rate(s) and interest amount(s), calculated pursuant to section 35.19a of the Commission's regulations." NEP filed a motion for clarification and an alternative request for rehearing as to the effective date of the Revised Interest Rate. NEP argued that the Commission is generally only empowered, under § 206 of the Federal Power Act, 16 U.S.C. § 824e, to order prospective relief when rates within a tariff are determined to be unreasonable. NEP asserted that the only applicable exception to this rule provides that when an appellate court has reversed a Commission order upholding an existing rate, the Commission may make the relief effective as of the date of the overturned order. See Natural Gas Clearinghouse v. FERC, 965 F.2d 1066, 1073 (D.C. Cir. 1992) (per curiam) (holding that FERC may make a new rate effective as of the date of an

overturned order by applying the "general principle of agency authority to implement judicial reversals"). Relying on this case law, NEP contended that the June 30, 2006 order from FERC, which we partially overturned in Norwood IV, "was the first and only order" that addressed whether the section J late payment fee was reasonable. Thus, NEP argued that the Revised Interest Rate should be effective as of June 30, 2006, with the 18 percent rate applicable to bills rendered before that date. NEP contended that any other outcome would violate the filed rate doctrine and its corollary, the rule against retroactive ratemaking, see Consol. Edison Co. v. FERC, 347 F.3d 964, 969 (D.C. Cir. 2003), and would exceed the scope of FERC's authority.

FERC denied NEP's motion for clarification and request for rehearing without addressing any of these arguments regarding retroactivity. Instead, FERC concluded that "the Court of Appeals has already decided the issue of the Revised Interest Rate's effective date." In support of this conclusion, the Commission cited the sentence from Norwood IV in which we concluded that "whatever the figure FERC finds justified, the tariff provides that Norwood owes that amount from the time the bill was rendered." 476 F.3d at 29. FERC interpreted this language as a conclusive determination by this court that the lower Revised Interest Rate must be applied to all bills since 1998.

On appeal, FERC and Norwood defend the retroactive application of the Revised Interest Rate on the theory that its effective date was governed by the law of the case doctrine, which "'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" NLRB v. Goodless Bros. Elec. Co., 285 F.3d 102, 107 (1st Cir. 2002) (quoting Arizona v. California, 460 U.S. 605, 618 (1983)). This doctrine means that "[a]n appellate court's mandate controls all issues that 'were actually considered and decided by the appellate court, or as were necessarily inferred from the disposition on appeal.'" Id. (quoting Cohen v. Brown Univ., 101 F.3d 155, 188 (1st Cir. 1996)) (internal quotation marks omitted). However, "it is equally clear that issues that were not decided by the appellate court and that are thus outside the scope of the mandate are not affected by the mandate." de Jesus-Mangual v. Rodriquez, 383 F.3d 1, 6 (1st Cir. 2004); see also Biggins v. Hazen Paper, 111 F.3d 205, 209 (1st Cir. 1997) ("[M]andates require respect for what the higher court decided, not for what it did not decide.").

In Norwood IV, the question of whether it would be within FERC's power to order a lower prime rate-based interest rate to be applied to all bills from 1998 forward was not briefed by the parties nor discussed in the panel opinion. As the voluminous

briefs of the parties in this current appeal illustrate, the proper scope of FERC's authority to retroactively adjust the unreasonable interest rate on Norwood's late payments requires a careful examination of the statutory language in the Federal Power Act and the case law interpreting it, as well as careful consideration of the applicability of that law to the facts in this case. That examination was never undertaken by this court in Norwood IV, nor would we have purported to decide such a complex question in a single sentence and without the benefit of briefing and argument from the parties.

Instead, we decided only the much narrower question that was properly before us: namely, whether Norwood owed any interest at all for the period preceding February 2006. That question could be answered simply by referencing the terms of the tariff itself and that is what we did. The sentence cited by FERC as deciding the effective date of the Revised Interest Rate is merely a paraphrase of the language of the tariff itself. Our remand "as to whether more [than the prime rate] is properly due" returned to FERC the consideration of what level of interest – somewhere between the prime rate and the 18 percent rate in the tariff – was properly due as to each monthly bill rendered by NEP.[4] Subsumed within this consideration was the question of whether the 18

_____

[4]Our remand also did not require FERC to conclude that the same amount of interest would apply to each of the monthly bills.

percent rate was unreasonable – as well as the question of what FERC could and should do about it if the higher rate was found to be unreasonable, a question that was never before us in <u>Norwood IV</u>.[5]

Indeed, our remand order did not presume that FERC would find the section J rate to be unreasonable. Instead, we left open the possibility that FERC "could sustain the 18 percent figure against attack." <u>Norwood IV</u>, 476 F.3d at 29. The proper effective date for the lower interest rate thus was not ripe for our review at that time and necessarily fell outside of the scope of our mandate in <u>Norwood IV</u>.[6] Therefore, the law of the case doctrine does not remotely support FERC's decision on the effective date of the Revised Interest Rate.

_____

[5]The dissent insists that the language of our remand left no room for FERC to consider NEP's retroactivity arguments. We disagree. Within the consideration of what was "properly due," FERC was not only permitted, but indeed required, to consider both the reasonableness of the tariff rate and the scope of its powers to retroactively apply a lower rate if it found the tariff rate to be unreasonable. Both of these considerations would be part and parcel of FERC's determination of what amount of interest was "properly due."

[6]The dissent states that "[t]o the extent that NEP believes it unfair that it is bound by FERC's adherence to a reasonable construction of the court's mandate, its objections come to late." Dissent at 14. However, we hold that FERC's construction of our mandate was <u>unreasonable</u>. Accordingly, NEP was under no obligation to anticipate this construction and seek rehearing.

**III**.

"[A]n administrative order 'must stand or fall on the grounds articulated by the agency' in that order." NorAm Gas Transmission Co. v. FERC, 148 F.3d 1158, 1165 (D.C. Cir. 1998) (quoting Algonquin Gas Transmission Co. v. FERC, 948 F.2d 1305, 1312 n.12 (D.C. Cir. 1991)). In this case, FERC's only articulated ground for the 1998 effective date of the Revised Interest Rate is its misreading of the scope of our holding in Norwood IV.

Nonetheless, in its brief on appeal, NEP urges us to go farther and address the merits of the retroactivity issue itself. NEP argues that FERC exceeded the limits of its statutory authority by applying the Revised Interest Rate retroactively and, therefore, requests that we remand with instructions directing FERC to apply the Revised Interest Rate only to the late payment charges billed after June 30, 2006 while applying the 18 percent rate to the earlier bills.

We decline this request. Although NEP presented arguments against retroactive application of the lower rate to FERC, FERC did not address those arguments or provide an adequate response to them because the Commission incorrectly concluded that the arguments were foreclosed by Norwood IV. See NorAm Gas Transmission, 148 F.3d at 1165 ("'[I]t most emphatically remains the duty of this court to ensure that an agency engage the arguments raised before it . . . .'" (quoting K N Energy, Inc. v.

-11-

<u>FERC</u>, 968 F.2d 1295, 1303 (D.C. Cir. 1992))). The proper course of action then is to remand so that the agency may "bring to bear on the facts the proper administrative and statutory considerations, a function which belongs exclusively to the Commission in the first instance." <u>SEC</u> v. <u>Chenery Corp.</u>, 332 U.S. 194, 200 (1947). As we observed in a prior case, "[A]nswers [to questions not adequately addressed in FERC's orders] can be imagined, but it is FERC that must formulate and adopt them in the first instance."[7] <u>Cent. Me. Power Co.</u> v. <u>FERC</u>, 252 F.3d 34, 48 (1st Cir. 2001). We therefore vacate the portion of the orders concerning the effective date of the Revised Interest Rate and remand to the Commission for full consideration of the retroactivity issues raised by NEP.

So ordered.  Each party shall bear its own costs.

**— DISSENTING OPINION FOLLOWS —**

---

[7]The dissent states that NEP's retroactivity argument "has nothing to do with the primary policy rationale for the retroactivity ban." Dissent at 16 n.1. We properly leave it to FERC to make this determination in the first instance. If NEP's arguments are easily dispatched, we trust that FERC will do so.

-12-

**CUDAHY**, <u>Circuit Judge</u>, **dissenting**.  The majority has called for another remand in this stale case to give the Commission an additional opportunity to restate the conclusion it has already emphatically declared in its ruling on New England Power's (NEP's) petition for clarification and rehearing.  The result reached by the Commission here is entirely fair, assessing Norwood as a remedy for non-payment of a contract termination charge an interest payment related to the cost of money and denying NEP a windfall of 18 percent interest unrelated to that cost.  <u>See</u> <u>Connecticut Light & Power</u>, 59 F.P.C. 811, 821 (1977).

The majority has rejected the Commission's invocation of the law of the case doctrine as the basis of its holding that the prime rate of interest should be assessed from the time of rendition of the bill and not from some later date.  But the majority has ignored the fact that the Commission has specifically invoked the terms of the mandate of <u>Town of Norwood</u> v. <u>FERC</u>, 476 F.3d 18 (1st Cir.), <u>cert. denied</u>, 128 S. Ct. 432 (2007) (<u>Norwood IV</u>). The "mandate rule" "generally requir[es] conformity with the commands of a superior court on remand, [and] is simply a specific application of the law of the case doctrine."  <u>United States</u> v. <u>Bell</u>, 988 F.2d 247, 251 (1st Cir. 1993).  It is the mandate of the First Circuit in <u>Norwood IV</u> which is decisive here.

The language of this Circuit in its Judgment and Mandate in <u>Norwood IV</u> stated very clearly:

-13-

> [A]s to the interest, we also affirm the order insofar as it requires interest payments based on at least the prime rate—the figure Norwood itself seeks—and remand _only_ as to whether more is properly due.

Id. at 29 (emphasis added).

This mandate leaves no room for the Commission to shorten the period of assessment of reduced interest payments. The First Circuit here also ruled that "whatever the [interest] figure FERC finds justified, the tariff provides that Norwood owes that amount from the time the bill was rendered." Id. It is very difficult for me to understand how FERC could have assessed interest at some time other than when the bill was rendered in the face of this mandate from the First Circuit.

Further, the justifications for the law of the case doctrine and the related "mandate rule," namely "stability in the decisionmaking process, predictability of results, proper working relationships between trial and appellate courts, and judicial economy," United States v. Connell, 6 F.3d 27, 30 (1st Cir. 1993) (quoting United States v. Rivera-Martinez, 931 F.2d 148, 151 (1st Cir.), cert. denied, 502 U.S. 862, 112 S. Ct. 184, 116 L. Ed. 2d 145 (1991)), are borne out by the instant case. To the extent NEP believes it unfair that it is bound by FERC's adherence to a reasonable construction of the court's mandate, its objections come too late. If it objected to the language of the court's mandate, NEP was free to seek rehearing or rehearing en banc or Supreme

-14-

Court review.  NEP has waived the timing concession it now seeks to recover.  See Sithe New England Holdings, LLC v. FERC, 308 F.3d 71, 75 (1st Cir. 2002) (if FERC had any doubt as to the meaning of the court's remand order, "it could easily have sought clarification").  FERC dutifully followed Norwood IV's mandate. NEP, having failed to object to the scope of Norwood IV's mandate, seeks to add yet another chapter to a dispute that has dragged on for ten years and has spawned what is now a total of five decisions from this court.

The majority suggests that in order to justify the Commission's adherence to the inescapable words of the court's mandate, at some point in the court proceedings the issue of the filed rate doctrine or retroactivity must have been raised and expressly and specifically decided by the First Circuit.  If this were a matter of issue preclusion (collateral estoppel), it might have been necessary for retroactivity to have been specifically addressed.  However, the question here is the mandate of the court, which establishes the limits of Commission action on remand, not issue preclusion.  And for this purpose, one must only address the words and meaning of the mandate and be guided by them.  The thesis of the majority seems to be that the mandate of the First Circuit may be broadened to include matters that the court did not address and the authority of the Commission on remand correspondingly enlarged.  While a lower court or agency can consider "any issue not expressly or impliedly disposed of on appeal,"  Biggins v.

<u>Hazen Paper Co.</u>, 111 F.3d 205, 209 (1st Cir. 1997) (internal quotation marks and citation omitted), FERC acted reasonably in taking the court at its word that on remand, it should consider only the reasonableness of the interest rate to be applied to late payments.[8]

There is no <u>Chenery</u> issue here since the Commission relied on the court's mandate in <u>Norwood IV</u>, which was entirely proper—in fact inescapable. Hence, NEP's effort to raise a technical issue of retroactivity by attempting to evade the mandate of <u>Norwood IV</u> must fail and the Commission's fair resolution of the remedy for premature contract termination must stand.

Therefore, I respectfully dissent.

---

[8]It was not unreasonable, as NEP suggests, for FERC to interpret the <u>Norwood IV</u> mandate as it did merely because <u>Norwood IV</u> did not discuss the issues of retroactivity and the application of the filed rate doctrine. In any event, "every time that FERC or any comparable agency decides that an existing rate is unjust and orders refunds to buyers for a past period, it is engaging in permissible 'retroactive ratemaking' in a vernacular sense." <u>Sithe</u>, 308 F.3d at 78. NEP's argument here has nothing to do with the primary policy rationale for the retroactivity ban. "What is primarily restricted by the [Federal Power Act] . . . is for the agency to surprise buyers, who paid the tariffed rate for a service, by telling them that they must now pay an increased price for past services." <u>Id.</u> In the words of <u>Sithe</u>: "There are indeed limits on 'retroactive ratemaking'; but this is a slogan even more abused than petitioners' claims of entitlement to a just and reasonable . . . rate. (It is further confused by invocations of a companion notion—the so-called 'filed rate doctrine,' a phrase that covers more than one precept.)" <u>Id.</u> at 77.