CUDAHY, Circuit Judge,
dissenting.
The majority has called for another remand in this stale case to give the Commission an additional opportunity to restate the conclusion it has already emphatically declared in its ruling on New England Power’s (NEP’s) petition for clarification and rehearing. The result reached by the Commission here is entirely fair, assessing Norwood as a remedy for non-payment of a contract termination charge an interest payment related to the cost of money and denying NEP a windfall of 18 percent interest unrelated to that cost. See Connecticut Light & Power, 59 F.P.C. 811, 821 (1977).
The majority has rejected the Commission’s invocation of the law of the case doctrine as the basis of its holding that the prime rate of interest should be assessed from the time of rendition of the bill and not from some later date. But the majority has ignored the fact that the Commission has specifically invoked the terms of the mandate of Town of Norwood v. FERC, 476 F.3d 18 (1st Cir.), cert. denied, — U.S. - — , 128 S.Ct. 432, 169 L.Ed.2d 258 (2007) (Norwood IV). The “mandate rule” “generally requir[es] conformity with the commands of a superior court on remand, [and] is simply a specific application of the law of the case doctrine.” United States v. Bell, 988 F.2d 247, 251 (1st Cir.1993). It is the mandate of the First Circuit in Norwood IV which is decisive here.
The language of this Circuit in its Judgment and Mandate in Norwood IV stated very clearly:
[A]s to the interest, we also affirm the order insofar as it requires interest payments based on at least the prime rate— the figure Norwood itself seeks — and remand only as to whether more is properly due.
Id. at 29 (emphasis added).
This mandate leaves no room for the Commission to shorten the period of assessment of reduced interest payments. The First Circuit here also ruled that “whatever the [interest] figure FERC finds justified, the tariff provides that Nor-wood owes that amount from the time the bill was rendered.” Id. It is very difficult for me to understand how FERC could *62 have assessed interest at some time other than when the bill was rendered in the face of this mandate from the First Circuit.
Further, the justifications for the law of the case doctrine and the related “mandate rule,” namely “stability in the decisionmak-ing process, predictability of results, proper working relationships between trial and appellate courts, and judicial economy,” United States v. Connell, 6 F.3d 27, 30 (1st Cir.1993) (quoting United States v. Rivera-Martinez, 931 F.2d 148, 151 (1st Cir.), cert. denied, 502 U.S. 862, 112 S.Ct. 184, 116 L.Ed.2d 145 (1991)), are borne out by the instant case. To the extent NEP believes it unfair that it is bound by FERC’s adherence to a reasonable construction of the court’s mandate, its objections come too late. If it objected to the language of the court’s mandate, NEP was free to seek rehearing or rehearing en banc or Supreme Court review. NEP has waived the timing concession it now seeks to recover. See Sithe New England Holdings, LLC v. FERC, 308 F.3d 71, 75 (1st Cir.2002) (if FERC had any doubt as to the meaning of the court’s remand order, “it could easily have sought clarification”). FERC dutifully followed Norwood TV’s mandate. NEP, having failed to object to the scope of Norwood IVs mandate, seeks to add yet another chapter to a dispute that has dragged on for ten years and has spawned what is now a total of five decisions from this court.
The majority suggests that in order to justify the Commission’s adherence to the inescapable words of the court’s mandate, at some point in the court proceedings the issue of the filed rate doctrine or retroac-tivity must have been raised and expressly and specifically decided by the First Circuit. If this were a matter of issue preclusion (collateral estoppel), it might have been necessary for retroactivity to have been specifically addressed. However, the question here is the mandate of the court, which establishes the limits of Commission action on remand, not issue preclusion. And for this purpose, one must only address the words and meaning of the mandate and be guided by them. The thesis of the majority seems to be that the mandate of the First Circuit may be broadened to include matters that the court did not address and the authority of the Commission on remand correspondingly enlarged. While a lower court or agency can consider “any issue not expressly or impliedly disposed of on appeal,” Biggins v. Hazen Paper Co., 111 F.3d 205, 209 (1st Cir.1997) (internal quotation marks and citation omitted), FERC acted reasonably in taking the court at its word that on remand, it should consider only the reasonableness of the interest rate to be applied to late payments.[8]
*63 There is no Chenery issue here since the Commission relied on the court’s mandate in Norwood IV, which was entirely proper-in fact inescapable. Hence, NEP’s effort to raise a technical issue of retroactivity by attempting to evade the mandate of Nor-wood IV must fail and the Commission’s fair resolution of the remedy for premature contract termination must stand.
Therefore, I respectfully dissent.

. It was not unreasonable, as NEP suggests, for FERC to interpret the Norwood TV mandate as it did merely because Norwood TV did not discuss the issues of retroactivity and the application of the filed rate doctrine. In any event, “every time that FERC or any comparable agency decides that an existing rate is unjust and orders refunds to buyers for a past period, it is engaging in permissible ‘retroactive ratemaking’ in a vernacular sense.” Sithe, 308 F.3d at 78. NEP’s argument here has nothing to do with the primary policy rationale for the retroactivity ban. “What is primarily restricted by the [Federal Power Act] ... is for the agency to surprise buyers, who paid the tariffed rate for a service, by telling them that they must now pay an increased price for past services.” Id. In the words of Sithe: "There are indeed limits on 'retroactive ratemaking’; but this is a slogan even more abused than petitioners’ claims of entitlement to a just and reasonable ... rate. (It is further confused by invocations of a companion notion-the so-called 'filed rate doctrine,’ a phrase that covers more than one precept.)” Id. at 77.