# United States Court of Appeals
## For the First Circuit

No. 11-2400

CARMEN LLERENA DIAZ,

Plaintiff, Appellant,

v.

JITEN HOTEL MANAGEMENT, INC.,

Defendant, Appellee.

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, <u>U.S. District Judge</u>]

———————

Before

Boudin, Hawkins[*] and Thompson,
<u>Circuit Judges</u>.

———————

<u>Lynn A. Leonard</u> for Appellant.
<u>Ryan C. Siden</u> for Appellee.
<u>Jonathan J. Margolis</u>, <u>Ellen J. Messing</u>, and <u>James S. Weliky</u>, on brief for Massachusetts Employment Lawyers Association, Amicus Curiae.
<u>Anne L. Josephson</u> and <u>Sarah Wunsch</u>, on brief for American Civil Liberties Union of Massachusetts, Gay & Lesbian Advocates & Defenders, the Jewish Alliance for Law and Social Action, the Lawyers' Committee for Civil Rights and Economic Justice, Massachusetts Law Reform Institute, and the National Police Accountability Project, Amici Curiae.

———————

October 12, 2012

———————

[*]Of the Ninth Circuit, sitting by designation.

**HAWKINS**, **Circuit Judge**.     Plaintiff-Appellant Carmen Diaz ("Diaz"), after obtaining a jury verdict in her favor in the amount of $7,650 on one of six claims raised in her complaint, sought attorney's fees of $139,622 and $13,389.34 in costs.  The district court awarded $25,000 in fees and $9,434.74 in costs.  We affirm in part, reverse in part, and remand for further proceedings.

Beginning in 1985, Diaz worked as a housekeeper at a hotel in Dorchester, which was eventually purchased by defendant Jiten Hotel Management ("Jiten") and operated as a Holiday Inn Express.  In 1997-98, Mitesh Patel began working at the hotel as a general manager, and he and Diaz had various difficulties working together over the years.  Beginning in 2004, Diaz began to associate the problems she experienced with her age, claiming that Patel was making degrading age-related remarks to and about her. The last few years she did not receive annual raises and Diaz was eventually terminated.

In 2008, Diaz brought an action against Jiten, alleging six causes of action: (1) violation of the federal Age Discrimination in Employment Act; (2) violation of state antidiscrimination law; (3) violation of the state civil rights act (for intimidating witnesses to support false allegations of racism against Diaz); (4) wrongful termination; (5) intentional infliction of emotional distress; and (6) defamation.  Jiten denied the allegations and claimed it had good cause to terminate Diaz.

After taking depositions of various Jiten employees, Diaz moved voluntarily to dismiss all of her wrongful termination claims "as a result of discovery in this matter." The court therefore dismissed Counts III and IV. Diaz later also moved to dismiss Count VI (defamation). The court also granted Jiten's motion for summary judgment on Count V (intentional inflection of emotional distress), concluding it was barred by workers' compensation.

Ultimately Diaz proceeded to trial on two claims: her federal and state age discrimination claims. The jury found in her favor on the state law claim and awarded her $7,650 in compensatory damages. As a prevailing party, Diaz then sought attorney's fees in the amount of $139,622 and costs of $13,389.34.

The district court noted that only two of Diaz's original six claims proceeded to trial, and she only succeeded on one of them. The court reduced the requested fees by two-thirds "as an approximation for the number of hours spent working on the four claims that were not viable." The court accepted the requested hourly rate ($300/hr) as reasonable, and computed a lodestar of $44,766.

However, the court determined that the fees should be further adjusted downward. The court pointed out that if Diaz had accepted Jiten's $75,000 settlement offer, she would have received more personally and her attorney would have only received about $25,000, and that it created a dangerous incentive to take low

value claims to trial instead of settling.  The court ultimately determined that "imposing a one-third limit of the offered settlement enacts a reasonable compromise on the need to compensate Attorney Leonard, encourage lawyers to represent civil rights plaintiffs, and the need to deter lawyers from discouraging settlement in order to get rich on the backs of their clients."

We review an award of attorney's fees for legal error or manifest abuse of discretion.  Burke v. McDonald, 572 F.3d 51, 63 (1st Cir. 2009).

Because she was a prevailing party on her state law age discrimination claim, Diaz was entitled to attorney's fees under M.G.L. 151B § 9.  The initial estimate of a reasonable attorney's fee is the lodestar calculation of hours reasonably expended times a reasonable hourly rate.  Draper v. Town Clerk of Greenfield, 384 Mass. 444, 449 (1981).

However, Diaz prevailed on only one of the six claims she initially raised in her complaint.  In such a situation, the Supreme Court has directed courts to consider whether the unsuccessful claims were unrelated, or whether they were instead based on a "common core of facts" or "related legal theories." Hensley v. Eckerhart, 461 U.S. 424, 435 (1983).

Here, the district court expressly recognized that two of the claims, which went to trial, were interrelated and based on the same core facts.  By implication, the district court necessarily

-4-

found the remaining four claims were distinct and severable from the successful claim. This conclusion is not unreasonable, as Diaz's own pleadings recognize that the dismissed claims are based on a different core of facts: in her Motion to Dismiss Claims and to Clarify Complaint, she indicates she wishes to proceed on Counts I and II (the state and federal age discrimination claims), and states that Paragraphs 6-17 of her amended complaint "form the factual basis of this claim"; paragraphs 18-28, on the other hand, are relevant to the dismissed termination, defamation, and witness tampering counts.[1]

The district court therefore applied a two-thirds reduction to the lodestar "as an approximation for the number of hours spent working on the four claims that were not viable." The court explained that it would ideally make a more specific reduction by the exact hours worked on those claims, but that the invoices did not provide a level of detail that permitted the court to do so. The court did not abuse its discretion by making this proportionate reduction under these circumstances. See Burke, 572 F.3d at 64.

The district court's further reduction of fees from

---

[1]Because our analysis turns on the severability of Diaz's claims that did not go to trial, and not on the underlying merits of such claims, we deny her Motion to Strike Appellee's Supplemental Appendix as moot. We also deny Jiten's Request for Sanctions under Local Rule 38.0.

$44,766 to $25,000, because of an undue emphasis on Diaz's rejection of a pre-trial $75,000 settlement offer, is another matter. Although the court noted that it had "absolutely no reason to question [Diaz's counsel's] integrity," it appeared concerned that there was a perverse incentive for attorneys to encourage clients to reject reasonable offers and proceed to trial to earn more in fees. These assumptions, which underlie the perceived need for this reduction, are flawed for a variety of reasons.

First, a contingent fee arrangement in a civil rights case does not impose a ceiling on the amount an attorney can recover under fee-shifting statutes. See Blanchard v. Bergeron, 489 U.S. 87, 93 (1989); Furtado v. Bishop, 635 F.2d 915, 917-20 (1st Cir. 1980). Rather, the rules surrounding fee-shifting in civil rights cases are designed to encourage attorneys to take these types of cases and are based on full compensation for the work performed, rather than on the particular agreement between the plaintiff and her attorney.

Significantly, civil rights attorneys *already* have incentives to encourage their clients to take reasonable settlement offers, because they can only recover fees if their client is the "prevailing party," something that is not assured if they take the gamble of going to trial, not to mention the additional work and preparation that is required for taking a case to trial. Further, the district court's rationale assumes that attorneys are violating

their ethical duties, which require the *client*, not the lawyer, to make all settlement decisions.

Moreover, the Federal Rules already contain a mechanism whereby a defendant can contain fees and costs through a reasonable settlement offer: Under Rule 68, a party who rejects a formal Rule 68 offer and then fails to obtain greater relief cannot recover any fees and costs which accrue after the date of rejection. Marek v. Chesny, 473 U.S. 1, 11-12 (1985). Thus, the federal rules already provide the defendant with a mechanism to make the plaintiff "'think very hard' about whether continued litigation is worthwhile," id. at 11, such that the judge-made prophylactic ruling in this case is unnecessary.

Importantly, this limitation on recovery is only available where Rule 68 has been formally invoked: a "garden-variety settlement offer made without resort to Rule 68 affords the offeror no similar protection; he cannot reasonably expect to gain the benefits that Rule 68 confers." Spooner v. EEN, Inc., 644 F.3d 62, 71 (1st Cir. 2011). Because Jiten did not avail itself of this option, it cannot now use its informal offer as a sword.[2]

For these reasons, and in the absence of any suggestion

---

[2]In fact, the district court actually penalized Diaz more than applying Rule 68 would have: under Rule 68, Diaz would have only forfeited fees and costs incurred after rejection of the offer, whereas the $25,000 figure is only a fraction of fees incurred prior to the offer.

of actual attorney misconduct, we conclude the district court's fee reduction improperly focused on Diaz's rejection of the settlement offer. We remand for the court to re-evaluate the twelve Hensley factors[3] and determine whether any further reduction to the fee award is proper.

On remand, the district court should also re-examine its reduction of costs. The court indicated it was excluding from the cost award the cost of deposing any deponents who did not actually testify, but three of the excluded deponents–Maria Hernandez, Maria (Elena) Lopez, and Denise Brown–actually did testify at trial.

Finally, the court's order was silent as to pre- or post-judgment interest on the attorney's fee award. Diaz is entitled to post-judgment interest on the fee award, calculated from the time of judgment. Nardone v. Patrik Motors Sales, Inc., 46 Mass.App.Ct. 452, 453 & n.3 (1999). She is also entitled to pre-judgment interest on her compensatory damages award, but is not entitled to pre-judgment interest on the attorney's fee award because the fees are not part of the underlying damages. See Siegel v. Berkshire Life Ins. Co., 70 Mass.App.Ct. 318, 322 (2007) (differentiating between attorney's fees expended defending a creditor's suit as a result of the company's unfair conduct, which were part of the actual compensatory award, and the attorney's fees expended against defendant vindicating rights under c. 93A, which were not).

---

[3] 461 U.S. at 430 n.3.

For the foregoing reasons, we <u>affirm in part</u>, <u>reverse in part</u>, and <u>remand for further proceedings</u> consistent with this disposition. Each party shall bear its own costs on appeal.