# United States Court of Appeals
## For the First Circuit

No. 13-1444

CARMEN LLERENA DIAZ,

Plaintiff, Appellee,

v.

JITEN HOTEL MANAGEMENT, INC.,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Lynch, Chief Judge,
Thompson and Kayatta, Circuit Judges.

Edward S. Cheng, with whom Sherin and Lodgen, LLP, Ryan C.
Siden, and Siden & Associates, P.C., were on brief, for appellant.
Lynn A. Leonard for appellee.

December 18, 2013

**KAYATTA, Circuit Judge**.  Before us now for the third time, this case focuses our attention on whether the mandate we issued last time the case was before us foreclosed an otherwise unchallenged use of Federal Rule of Civil Procedure 60(a) to modify the judgment on remand.  We are also asked to determine whether an award of $104,626.34 in attorney's fees and costs, for a suit obtaining a damages award of $7,650, is so disproportionate as to constitute an abuse of discretion.  Answering yes to the first question and no to the second, and otherwise rejecting appellant's argument that the district court failed to comply with our mandate, we affirm.

## I.  Facts

After losing her job as executive housekeeper at the Holiday Inn Hotel in Dorchester, Massachusetts, Carmen Diaz brought claims against the operator of the hotel, Jiten Hotel Management, Inc., for (1) violating the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-34 ("Count I"); (2) violating the Massachusetts antidiscrimination law, Mass. Gen. Laws ch. 151B, § 4 ("Count II"); (3) violating the state civil rights act, Mass. Gen. Laws ch. 12, §§ 11H-I ("Count III"); (4) wrongful termination ("Count IV"); (5) intentional infliction of emotional distress ("Count V"); and (6) defamation ("Count VI").  As the litigation progressed, Diaz voluntarily dismissed Counts III, IV, and VI, and

the court granted summary judgment in favor of Jiten on Count V. Only the two discrimination claims went to trial.

Diaz obtained a jury verdict on the state claim in the amount of $7,650. Judgment was entered in her favor and affirmed on appeal. See Diaz v. Jiten Hotel Mgmt., Inc., 671 F.3d 78 (1st Cir. 2012). She then proceeded to seek attorney's fees for all hours reasonably spent on the entire case, plus costs.

In response, Jiten argued that Diaz should not receive fees and costs attributable to her unsuccessful claims. The district court agreed, deciding to reduce Diaz's fees to account for the fact that much of counsel's time was devoted to pursuing claims that were dropped or dismissed. Explained the court:

> Based on this procedural history, this Court will reduce Diaz's requested attorneys' fees by two-thirds, reflecting the four of her six claims that she either voluntarily dismissed after realizing that they were not viable or acknowledged were barred by statute. Hours spent working on such untenable claims "cannot be deemed to have been 'expended in pursuit of the ultimate result achieved.'" [Hensley v. Eckerhart, 461 U.S. 424, 435 (1983)] (quoting Davis v. County of Los Angeles, No. 73-63-WPG, 1974 WL 180, at *3 (C.D. Cal. June 5, 1974)). Ideally, the Court would be able specifically to reduce the request by the number of hours worked on the unviable claims. The Invoices do not, however, provide a level of detail to allow the Court to do so. The Court therefore uses the two-thirds deduction as an approximation for the number of hours spent working on the four claims that were not viable.

Diaz v. Jiten Hotel Mgmt., Inc., 822 F. Supp. 2d 74, 80 (D. Mass. 2011).

After arriving at a reduced lodestar[1] of $44,766, the district court then made a second, further reduction, lowering the award to $25,000 because Diaz had rejected a settlement offer that would have left Diaz's counsel with a $25,000 contingent fee and Diaz with an amount in excess of what the jury awarded. Diaz filed a motion for reconsideration, arguing that neither reduction was appropriate. After the district court denied her motion, Diaz appealed.

On appeal, Diaz challenged both reductions. She contended, first, that the district court should not have concluded that time spent on her unsuccessful claims could be severed from time spent on her successful one. As a result, she argued, the district court should not have reduced her fee request merely because some counts fell on the way to her victory on the state law discrimination claim. She contended further that the district court had independently abused its discretion by adjusting the fees downward to account for her rejection of the settlement offer. See Diaz v. Jiten Hotel Management, Inc., 704 F.3d 150 (1st Cir. 2012).

Recognizing that the calculation of fee awards calls for an exercise of discretion, we rejected Diaz's challenge to the

---

[1] The "lodestar," ordinarily the starting point for determining the amount of a fee award, is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. See, e.g., Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Joyce v. Town of Dennis, 720 F.3d 12, 26-27 (1st Cir. 2013).

-4-

decision to reduce the lodestar to account for the four dropped claims. Simply put, the district court had ample discretion in such matters, and it did not abuse that discretion by refusing to make Jiten pay for attorney's fees incurred by Diaz in the pursuit of unsuccessful and largely independent claims. Id. at 153-54.

Though we found no abuse of discretion in the exclusion of unsuccessful claims, we held that the district court had erred in further reducing the attorney's fees on account of Diaz's rejection of the settlement offer. Id. at 154. In doing so, we noted that the rules surrounding fee-shifting in civil rights cases are "based on full compensation for the work performed." Id. Our mandate, which issued on October 11, 2012, set aside the second reduction, but also instructed the district court to "re-evaluate the twelve Hensley factors and determine whether any further reduction to the fee award is proper," id. (footnote omitted),[2] to re-examine its reduction of costs, as it had erroneously excluded the costs of a number of depositions, id. at 154-55, and to recalculate both the damages award (to reflect pre-judgment interest) and the attorney's fee award (to include post-judgment interest), id. at 155.

---

[2] The Hensley factors, so called because of their enumeration in Hensley v. Eckerhart, 461 U.S. 424, 433 (1983), represent considerations that may support upward or downward adjustments from a lodestar. See infra note 7.

On remand, Diaz for the first time argued that in deducting for time spent on unsuccessful claims, the district court should have used a different, more refined methodology than simply subtracting two-thirds of the total hours. Diaz's belated argument came in the form of a Rule 60(a) motion,[3] in support of which she pointed out that her invoices, when viewed against the court's docket entries, allowed the court to account for the fact that the unsuccessful claims were not pursued at all stages of the case, but instead dropped out along the way. In Diaz's words, "[c]learly, the Court intended to reduce hours spent on unviable claims, but its computation included a global two-thirds deduction for time expended <u>after the claims were dismissed</u>." (emphasis in original). Jiten responded, citing our opinion in <u>Toscano</u> v. <u>Chandris, S.A.</u>, 934 F.2d 383, 386 (1st Cir. 1991) (holding that "[m]atters cognizable under Rule 60(a) are, generally, mechanical in nature"), and arguing that the reduction was "an interpretation of law which, even if erroneous, cannot be corrected under Rule 60(a)." After the district court denied Diaz's motion, she requested the same relief a second time. In response to her second motion, Jiten added to its Rule 60(a) argument the contention that the district

---

[3]   <u>See</u> Fed. R. Civ. P. 60(a) ("The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record.").

court could not provide Diaz the relief she requested without exceeding the scope of our mandate.

After again demurring, the district court later accepted Diaz's argument. Adhering to the principle that Diaz should not receive fees incurred in pursuit of unsuccessful claims, the district court reapportioned the hours devoted to the case more accurately between successful and unsuccessful claims by proportionately reducing Diaz's lodestar only to the extent that fees were incurred when some or all of the unsuccessful claims remained pending.[4] The district court classified this alteration of its prior calculation as a correction under Rule 60(a).

The district court found no reason to make any further reductions. While the order made no express mention of the Hensley factors, it stated that "[s]ilence on a matter reflects this Court's conclusion that its earlier opinion accurately reflects the law and the decision on this matter and requires no further elaboration," and further noted that "[t]he Court sees no significant reason to make any further adjustments up or down." After the district court entered judgment for Diaz in the amount of $93,945 in fees and $10,681.34 in costs, Jiten filed this appeal.

---

[4] As the district court explained, it "reduced the hours expended on any given Invoice line by the fraction of the claims that were substantively unviable out of all of those procedurally live [at the time of the invoice entry]. Then, the Court simply summed all of the individual Invoice lines of compensable hours to get the total number of compensable hours."

-7-

## II. Analysis

Jiten raises three discrete challenges to the district court's judgment. First, it argues that the mandate rule precluded the district court from granting Diaz's Rule 60(a) motion. Second, it argues that by declining to enumerate and individually analyze each of the Hensley factors, the district court disobeyed the remand order. Finally, it argues that the district court abused its discretion by awarding fees disproportionate to the damages that Diaz ultimately recovered.

We address these arguments in turn.

### A. The Mandate Rule

District courts have discretion under Rule 60(a) in deciding whether to correct oversights in their orders and judgments. See Bowen Inv., Inc. v. Carneiro Donuts, Inc., 490 F.3d 27, 29 (1st Cir. 2007). Had there been no intervening appeal, clearly the district court would have retained the full breadth of that discretion. And Jiten does not press on appeal the argument it made below that the alteration made in the formula used to account for the two-thirds reduction went beyond the type of correction that a court may ordinarily make under Rule 60(a). We therefore assume, though we do not decide, that the district court's use of Rule 60(a) would have been proper in the absence of

an intervening appeal.[5]  There was, however, an intervening appeal, and a mandate.  And it was that mandate, Jiten argues, that effectively precluded the district court from doing what it did.

Jiten is correct that an appellate mandate constrains the scope of proceedings on remand.  The mandate rule, which at base requires a court to "scrupulously and fully" carry out a higher court's order after remand, helps to maintain "proper working relationships" between the various courts in our multi-tiered federal judiciary.  See, e.g., Doe v. Chao, 511 F.3d 461, 465 (4th Cir. 2007) ("Few legal precepts are as firmly established as the doctrine that the mandate of a higher court is controlling as to matters within its compass." (internal quotation marks omitted)); United States v. Bell, 988 F.2d 247, 251 (1st Cir. 1993).  Thus, as we observed in  Biggins v. Hazen Paper Co., 111 F.3d 205, 209 (1st Cir. 1997), "the mandate of an appellate court forecloses the lower court from reconsidering matters determined in the appellate court." (internal quotation marks omitted); see also Elias v. Ford Motor Co., 734 F.2d 463, 465 (1st Cir. 1984).  This foreclosure of efforts to reconsider what the appellate court has decided admits of only the narrowest exceptions.  Bell, 988 F.2d at 250-51; see also United States v. Connell, 6 F.3d 27, 30 (1st Cir. 1993); Doe,

_____

[5]  See, e.g., Dialysis Access Ctr., LLC v. RMS Lifeline, Inc., 638 F.3d 367, 374 n.7 (1st Cir. 2011) (arguments not raised on appeal are waived).

511 F.3d at 464-66 ("The mandate rule is a more powerful version of the law of the case doctrine." (internal quotation marks omitted)).

Nothing in the mandate rule, however, divests the district court altogether of its ability to correct "clerical mistake[s]," "oversight[s]," or "omission[s]," see Fed. R. Civ. P. 60(a). Rather, "[s]o long as the court truly is correcting an error which falls within the scope of [Rule 60(a)], and so 'long as the appellate court has not expressly or implicitly ruled on the issue,'" a district court is free to correct such mistakes. Klingman v. Levinson, 877 F.2d 1357, 1363 (7th Cir. 1989) (quoting Panama Processes, S.A. v. Cities Serv. Co., 789 F.2d 991, 994 (2d Cir. 1986)). This conclusion comports with our recognition that the mandate rule does not apply to "any issue not expressly or impliedly disposed of on appeal." Biggins, 111 F.3d at 209 (internal citation omitted).[6]

The key question, therefore, is whether anything in our prior opinions in this case, including our most recent mandate, either expressly or impliedly divested the district court of its otherwise continuing discretion to correct an oversight that caused

---

[6] See generally In re Frigitemp Corp., 781 F.2d 324, 327 (2d Cir. 1986) ("The rationale for the provision that a motion to correct a clerical error may be made 'at any time' is that the judgment simply has not accurately reflected the way in which the rights and obligations of the parties have in fact been adjudicated. In those circumstances, the goals of finality and repose are outweighed by the equitable goal of allowing a party who has in fact established his right to relief to receive that relief.").

the judgment to fail to reflect the trial court's previously stated intentions (that is, that the reduction apply only to time spent on unsuccessful claims).  And since there is certainly no express language in our mandate precluding in any way the relief ordered on remand, Jiten must rely on a contention that our mandate implicitly precluded any increase in the fee award other than what we expressly ordered.

In support of such a contention, Jiten points out that the prior appeal expressly addressed and affirmed the two-thirds reduction.  This is true, but our prior analysis and ruling did not indicate that the court's method was the only possible way to calculate the reduction.  Rather, we simply sustained the district court's discretion to make a deduction to account for the four unsuccessful claims.  We had no cause to address the propriety of the specific method used for making that reduction, as no party asked us to do so.  The limited scope of our review in this regard adhered to the rule that "when the balance struck by the trial court falls within the broad realm of reasonableness, there is no cause to place an appellate thumb on the decisional scales" of a fee calculation.  Foley v. City of Lowell, 948 F.2d 10, 19 (1st Cir. 1991).  Our opinion thus cannot plausibly be read to have conclusively determined the correctness of the formula used to calculate the proportional award, particularly when the propriety of that formula was neither challenged nor briefed on appeal.

-11-

Jiten also points out that our prior mandate, while enumerating specific increases in the lodestar calculation, also specified that the district court was to determine "whether any further reduction to the fee award is proper." See Diaz, 704 F.3d at 154. In Jiten's view, this specific command to consider further reductions implicitly precluded the district court from considering anything else. Our precedent is squarely to the contrary. Kashner Davidson Sec. Corp. v. Mscisz, 601 F.3d 19, 24 (1st Cir. 2010) ("The district court was not constrained to perform only those actions that we specifically listed in the mandate."). Moreover, this is not a case in which the logic of our prior opinion implied any judgment that the amount of the award exhausted the maximum reach of the district court's discretion. Simply put, we did not consider the matter.

Of course, a reason why we did not address the mathematical accuracy of the method used to make the two-thirds reduction was that Diaz herself never raised the issue on the prior appeal, or in the district court prior to that appeal. Because she easily could have raised the issue before the district court first entered judgment on her fee request, she likely waived any right to have either this court or the district court entertain it after appeal and remand. If a district court is so inclined, however, it may correct a judgment "on its own." Fed. R. Civ. P. 60(a). That is, ultimately, just what the district court did here. In short,

-12-

while the court likely had no obligation even to consider Diaz's request to correct the judgment, nothing barred it from doing so.

In so concluding, we remain sympathetic to the notion that litigation should move in the direction of a resolution. And the law of the case doctrine serves, in part, to further the interest in bringing litigation to a close. See, e.g., United States v. U.S. Smelting, Ref., & Mining Co., 339 U.S. 186, 198-99 (1950). "Remand" is therefore not "reopen." See, e.g., Bell, 988 F.2d at 250-52. And the balance between stability and precision should tilt more towards the former once a case has progressed beyond final judgment and through an appeal. See Harlow v. Children's Hosp., 432 F.3d 50, 55-56 (1st Cir. 2005). In our experience, though, district courts generally adhere to this view, perhaps even more firmly than do we. By simply affirming that the district courts retain on remand their narrowly circumscribed authority under Rule 60(a) unless we expressly or implicitly specify otherwise, we neither cast doubt on that view nor make any new law. See generally Standard Oil Co. of Cal. v. United States, 429 U.S. 17, 17-19 (1976) (discussing finality concerns relating to Rule 60(b) motions filed after appeal); 11 Wright, Miller, & Cooper, Federal Practice and Procedure § 2856 (3d ed. 2013) ("[T]he correction of judgments for clerical mistakes may be permitted even after an affirmance.").

## B. The **Hensley** Factors

Our most recent mandate in this case specified that on remand, the district court was to "re-evaluate the twelve Hensley factors and determine whether any further reduction to the fee award is proper." Diaz, 704 F.3d at 154 (footnote omitted).[7] The district court did not do so explicitly. Rather, in the order in which it recalculated the lodestar, the district court stated that "[s]ilence on a matter reflects this Court's conclusion that its earlier opinion accurately reflects the law and the decision in this matter and requires no further elaboration." After recalculating the lodestar and again excluding hours spent on untenable claims, the district court expressly reiterated that it saw "no significant reason to make any further adjustments up or down." Jiten now argues that the district court's failure to make explicit on remand its reconsideration of each Hensley factor indicated a failure to consider the factors at all.

---

[7] The factors, enumerated in Hensley v. Eckerhart, 461 U.S. 424, 430 n.3 (1983), include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

While the district court could have been both more responsive and more helpful had it provided a more detailed explanation as to how it was exercising its discretion on remand, its failure to do so does not lead us to adopt Jiten's conclusion. On remand, the district court explicitly noted that it "[took] its earlier attorney's fees and costs determination . . . as its starting point." Although it did not again incant the reasons guiding the exercise of its discretion in declining to adjust the award in light of the Hensley factors, it had previously enumerated its reasons as to eight of them. We had then rejected its reasons for adjusting downward on the basis of the remaining four. See Diaz, 704 F.3d at 154 ("[W]e conclude the district court's fee reduction improperly focused on Diaz's rejection of the settlement offer."). The district court's statement makes clear that the court declined on remand to adjust its prior analysis as to any of the factors, not that it declined to consider the factors at all. See Berman v. Linnane, 434 Mass. 301, 303 (2001) (holding that in applying the factors under the Massachusetts fee-shifting statute at issue here, "a factor-by-factor analysis, although helpful, is not required"). We therefore reject Jiten's claim.

## C. The Proportionality of the Fee Award

This brings us, finally, to Jiten's argument that the district court committed reversible error by failing to calibrate the amount of the fee award to the amount of the damages obtained.

-15-

Jiten urges upon us the proposal that an award "needs to be" proportional to the relief obtained, because "there is little social benefit to encouraging attorneys to spend resources . . . that are disproportionate to the results of the litigation." Because the district court awarded over $100,000 in fees and costs after the jury awarded only $7,650 in damages, "the disparity between the fees requested and the result obtained for Diaz is self evident," and the award must, Jiten says, be vacated.

Aware that a district court must undertake a number of judgment calls in order to determine the extent of a fee award, we review such awards only for mistake of law or abuse of the district court's "extremely broad" discretion. Martinez-Vélez v. Rey-Hernández, 506 F.3d 32, 47 (1st Cir. 2007). In this area, "we normally prefer to defer to any thoughtful rationale and decision developed by a trial court and to avoid extensive second guessing." United States v. Metro. Dist. Comm'n, 847 F.2d 12, 16 (1st Cir. 1988) (internal quotation omitted). Given the standard of review and the relevant statutory framework, Jiten's challenge fails.

The Massachusetts statute under which Diaz prevailed, Mass. Gen. Laws ch. 151B,[8] provides that "[i]f the court finds for the petitioner it shall, in addition to any other relief and irrespective of the amount in controversy, award the petitioner

---

[8] Because Diaz prevailed only under Massachusetts law, Massachusetts law governs our analysis. See Koster v. Trans World Airlines, Inc., 181 F.3d 24, 37 (1st Cir. 1999).

-16-

reasonable attorney's fees and costs unless special circumstances would render such an award unjust." Id. § 9. And as we noted in an earlier opinion in this very case, "the rules surrounding fee-shifting in civil rights cases are designed to encourage attorneys to take these types of cases and are based on full compensation for the work performed." Diaz, 704 F.3d at 154. Recently, in interpreting the very statute at issue here, we quoted the Supreme Judicial Court's comment that fee-shifting provisions are designed "to encourage suits that are not likely to pay for themselves, but are nevertheless desirable because they vindicate important rights." Joyce v. Town of Dennis, 720 F.3d 12, 31 (1st Cir. 2013) (quoting Stratos v. Dep't of Public Welfare, 387 Mass. 312, 323 (1982)).

As the principle of full compensation suggests, Jiten's emphasis on "proportionality" as determinative of reasonableness runs directly counter to fundamental precepts of Massachusetts law. See, e.g., Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co., 445 Mass. 411, 429-30 (2005). Under state law, "a judge must examine a number of factors to determine whether an award of attorney's fees and costs is reasonable." Id. "No one factor is determinative." Berman, 434 Mass. at 303.

Relying on that principle, we recently held that a district court had in fact abused its discretion when it "appeared to treat the damages award as the only significant result obtained"

under chapter 151B. Joyce, 720 F.3d at 31. We noted that "even if [a lawsuit] achieve[s] nothing other than compensatory relief" for the plaintiff, it is an error of law "for the district court to link the amount of recoverable attorney's fees solely to the amount of . . . damages." Id. We further noted that "[f]ee-shifting provisions in general reflect a legislative judgment that 'the public as a whole has an interest in the vindication of the rights conferred by the statutes.'" Id. (quoting City of Riverside v. Rivera, 477 U.S. 561, 574 (1986) (internal quotation marks omitted)). Thus, while the "results obtained" in litigation are a "preeminent consideration in the fee-adjustment process," such results can consist of "a plaintiff's success claim by claim, or [of] the relief actually achieved, or [of] the societal importance of the right which has been vindicated, or [of] all of these measures in combination." Joyce, 720 F.3d at 27. Jiten's narrow focus on the jury award evinces a misinterpretation of Massachusetts law.

This case produced a substantial order clarifying the stray remarks doctrine, see 762 F. Supp. 2d 319 (D. Mass. 2011), as well as a published First Circuit opinion holding that mixed-motive analysis applies to Massachusetts age discrimination claims, see 671 F.3d 78 (1st Cir. 2012). The fee request has already been adjusted downward so that it appropriates only time spent in pursuit of the claim on which Diaz prevailed. See generally Gay

-18-

Officers Action League v. Puerto Rico, 247 F.3d 288, 296 (1st Cir. 2001) (noting, in the context of a different fee-shifting statute, that "proportionality is no longer an issue once the prevailing party has separated the wheat from the chaff (i.e., isolated the time spent on her successful claim or claims)"). Jiten does not suggest that the hours expended were excessive or that the rate charged was too much; it simply maintains that the amount awarded is too large in proportion to the jury verdict. Because we see no basis in Massachusetts law for concluding that disproportionality alone supports vacatur of the district court's conscientious exercise of its discretion, we decline to disturb the district court's award of fees and costs.

### III. Conclusion

For the reasons explained above, the judgment below is affirmed. Each party shall bear its own costs and fees on this third appeal, which would have been unnecessary had Plaintiff timely proposed the correction that the district court ultimately adopted.

So ordered.